UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TELE-GUIA TALKING YELLOW PAGES, INC., | 07-cv-3948-DLC |
| Plaintiff, | **Jury Trial Demanded** |
| v. | **ECF Case** |
| CABLEVISION SYSTEMS CORPORATION, | |
| Defendant. | |

**DEFENDANT CABLEVISION SYSTEMS CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

I. BACKGROUND ..................................................................................................................1

II. DISMISSAL UNDER FED. R. CIV. P. 12(B)(7).............................................................2

    A. Patent Owners Are Necessary Parties................................................................3

    B. Patent Owners are Indispensable Parties ..........................................................4

    C. All Patent Owners Must Be Joined or the Case Dismissed .................................6

III. DISMISSAL IS APPROPRIATE....................................................................................6

    A. Tele-Guia Is Not The Sole Assignee ....................................................................7
        1. Micron is a Joint Owner of Both Patents......................................................7
        2. Carlos R. Jimenez Rodriguez Is A Joint Owner of Both Patents................. 8

    B. This Court Does Not Have Personal Jurisdiction Over The Joint Owners..............9

    C. Existence of Joint Owners Makes Dismissal Appropriate......................................9

IV. CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**

*A.L. Smith Iron Co. v. Dickson,*
141 F.2d 3 (2d Cir. 1944) ..........................................................................................4

*Ethicon v. United States Surgical Corp.,*
135 F.3d 1456 (Fed. Cir.), *cert. denied,*
525 U.S. 923 (1998)..................................................................................................3, 5, 10

*Graphic Controls Corp. v. Utah Medical Products,*
149 F.3d 1382 (Fed. Cir. 1998)...............................................................................6

*Independent Wireless Telegraph Co. v. Radio Corp. of Am.,*
269 U.S. 459 (1926)..................................................................................................4, 5

*Messerschmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co.,*
483 F.Supp. 49 (S.D.N.Y. 1979) .............................................................................5

*Provident Tradesmens Bank & Trust Co. v. Patterson,*
390 U.S. 102 (1968) .................................................................................................5

*Suprex Corp. v. Lee Scientific, Inc.,*
660 F.Supp. 89 (W.D.Pa. 1987) ..............................................................................3, 4

*Transco Prod. Inc. v. Performance Contracting,*
38 F.3d 551 (Fed. Cir. 1994), *cert. denied,*
513 U.S. 1151 (1995)...............................................................................................1

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,*
944 F.2d 870 (Fed. Cir. 1991).................................................................................4

*Waterman v. Mackenzie,*
138 U.S. 252 (1891).................................................................................................3, 10

*Water Techs. Corp. v. Calco, Ltd.,*
576 F.Supp. 767 (N.D.Ill. 1983) .............................................................................3, 4

**Federal Statutes**

35 U.S.C. § 262..................................................................................................................3

**New York Statutes**

C.P.L.R. § 302...............................................................................................................5, 9

**Federal Rules**

Fed. R. Civ. P. 4................................................................................................................6

Fed. R. Civ. P. 12....................................................................................................... passim

Fed. R. Civ. P. 19....................................................................................................... passim

## **TABLE OF ABBREVIATIONS**

| | |
|---|---|
| '491 Patent | U.S. Patent No. 5,479,491 |
| '735 Patent | U.S. Patent No. 5,187,735 |
| CSC | Defendant Cablevision Systems Corporation |
| Ex. | Exhibit attached to the Declaration of Benjamin Hershkowitz |
| Liberty | Liberty Cablevision of Puerto Rico, Inc. |
| Liberty Agreement | Agreement between Liberty and Tele-Guia dated May 12, 2003 |
| Micron | Micron Technology, Inc. |
| Micron Agreement | Agreement between Micron and Tele-Guia dated March 15, 1999 |
| Mr. Jimenez Rodriguez | Carlos R. Jimenez Rodriguez |
| Patents-in-suit | The '735 Patent and the '491 Patent |
| Tele-Guia | Plaintiff Tele-Guia Talking Yellow Pages, Inc. |
| USPTO | United States Patent and Trademark Office |

Patent infringement lawsuits must be brought by all owners of a patent. Dismissal of a patent infringement action is appropriate under Fed. R. Civ. P. 12(b)(7) when all patent owners are not joined in the action and joinder of the patent owners would be unfeasible. This patent case must be dismissed under Fed. R. Civ. P. 12(b)(7) because the plaintiff failed to join all of the owners of the asserted patents, these missing patent owners are necessary and indispensable parties and joinder is not feasible.

## I.   BACKGROUND

Plaintiff Tele-Guia Talking Yellow Pages, Inc. ("Tele-Guia") commenced this patent infringement litigation against Defendant Cablevision Systems Corporation ("CSC") on May 21, 2007.[1] *See* D.I. 1. Tele-Guia's Complaint alleges that CSC infringes U.S. Patent Nos. 5,187,735 ("'735 Patent") and 5,479,491 ("'491 Patent"). *Id.* at 3-5. The Complaint contains one count of direct infringement including both the '735 Patent and the '491 Patent (*Id.* at ¶¶ 14-21), and one count of inducing infringement including both the '735 Patent and the '491 Patent. *Id.* at ¶¶ 24-30.

The '735 Patent issued on February 16, 1993 and the '491 Patent issued on December 26, 1995.[2] Ex. A & Ex. B, respectively. Both are entitled "Integrated Voice-Mail Based Voice and Information Processing System." *Id.* Both patents list Jose E. Herrero Garcia and Carlos R.

---

[1] The Complaint was not served on CSC until June 12, 2007. D.I. 3. Prior to the commencement of this action, CSC had no contact with Tele-Guia or its counsel and was unaware of either the '753 Patent, the '491 Patent, or any possible infringement allegation that Tele-Guia might make against CSC products and services. In fact, Tele-Guia fails to provide any infringement analysis whatsoever, instead relying on two conclusory paragraphs stating that CSC directly infringes and induces the infringement of both the '753 Patent and '491 Patent. D.I. 1 at ¶¶ 15 & 27.

[2] The '491 Patent is a continuation of the '735 Patent. A patent is a "continuation" of a prior patent when it is based entirely on the prior patent. *See Transco Prod. Inc. v. Performance Contracting*, 38 F.3d 551, 555 (Fed. Cir. 1994), *cert. denied*, 513 U.S. 1151 (1995). Continuation patents claim subject matter directed to the same technology as the parent patent. *See id.*

1

Jimenez Rodriguez as named inventors. Both inventors purportedly assigned the patents to Tele-Guia upon issuance. *Id.* at 1.

Tele-Guia, however, is no longer the exclusive owner of the '735 Patent and '491 Patent. Agreements exist that identify other joint owners for each patent – namely, Micron Technology, Inc. ("Micron") and inventor Carlos R. Jimenez Rodriguez.

## II.    DISMISSAL UNDER FED. R. CIV. P. 12(B)(7)

Federal Rule of Civil Procedure 12(b)(7) states that dismissal is appropriate for "failure to join a party under Rule 19." Turning first to Rule 19(a), which states "a person who is subject to process" is a necessary party if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). If a party is found to be necessary under Rule 19(a) it must be joined if it is "subject to service of process." Fed. R. Civ. P. 19(a). If joinder is not feasible under Rule 19(a), Rule 19(b) sets out four factors that Courts consider when determining whether a party is indispensable:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

2

### A.     Patent Owners Are Necessary Parties

In the context of patents, the analysis is simple; in patent infringement actions, all co-owners must join as plaintiffs.[3] *See Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891). As a result, courts find that patent owners are necessary parties to patent infringement litigations.[4] *Accord Ethicon,* 135 F.3d 1468. "As owner of the patent, the university claims an interest in the validity of the patent, an issue that permeates all four counts of the complaint. A determination by this court of invalidity of the patent, as a practical matter, impairs the university's ability to defend the patent in later litigation, due to collateral estoppel implications." *See, e.g., Suprex Corp. v. Lee Scientific, Inc.* 660 F.Supp. 89, 93 (W.D.Pa. 1987) (finding a university patent owner a necessary and indispensable party); *see also Water Techs. Corp. v. Calco, Ltd.*, 576 F.Supp. 767, 770 (N.D.Ill. 1983) (finding a university necessary (and indispensable) party since future court may find the university "was not in privity with [plaintiff] and did not have a fair opportunity to litigate its claims, [and thus] it is apparent that there exists a substantial risk of prejudice to the present defendants within the meaning of [Rule] 19(a).")

---

[3] This rule stems from the rights presently codified in 35 U.S.C. § 262 which allows all joint owners the right to independently exploit the patented invention without the consent of their co-owners. *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir.), *cert. denied,* 525 U.S. 923 (1998). Because of this independent right to exploit, even the USPTO counsels about the dangers of joint ownership. *See* Ex. C ("Any joint owner of a patent, no matter how small the part interest, may make, use, offer for sale and sell and import the invention for his or her own profit provided they do not infringe another's patent rights, without regard to the other owners, and may sell the interest or any part of it, or grant licenses to others, without regard to the other joint owner, unless the joint owners have made a contract governing their relation to each other. It is accordingly dangerous to assign a part interest without a definite agreement between the parties as to the extent of their respective rights and their obligations to each other if the above result is to be avoided"). As a result, joint ownership is rare.

[4] The two exceptions to this rule are that in certain instances (1) exclusive licensees may sue in the patent owner's name; and (2) if the patent owners have specifically contracted around this

B.  **Patent Owners are Indispensable Parties**

In fact, patent owners are not only necessary but required. Historically, "[t]he presence of the owner of the patent as a party is *indispensable*, not only to give jurisdiction under the patent laws, but also in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus to either defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions." *See Independent Wireless Telegraph Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926) (emphasis added); *cf. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer"). A weighing of the four factors of Rule 19(b) confirms this result.

*First:* As set forth above, a defendant should not be required to litigate seriatim but address all issues involving a particular patent in a single action.[5] *Independent Wireless Telegraph Co.*, 269 U.S. at 468; *cf. Water Techs.*, 576 F.Supp. at 770. ("[T]he infringer's interest in being immune from a second suit by the owner overrides a licensee's interest in maintaining his action.") Furthermore, the absent owner would be prejudiced if its asset were devalued, for example, by a finding of invalidity. *See Suprex*, 660 F.Supp. at 93; *accord A.L. Smith Iron Co. v. Dickson*, 141 F.2d 3, 6 (2d Cir. 1944) ("[E]very patent owner has an interest in keeping the reputation of his patent form the stain of a judgment of invalidity – an interest which it is proper

---

requirement. *Ethicon*, 135 F.3d at 1468, n. 9. For the reasons discussed in Section III.A., *infra*, neither exception applies to Tele-Guia in this infringement action.

[5] The prejudice to a defendant in having to defend an improperly brought patent litigation is great. For example, the 2005 American Intellectual Property Law Association Economic Survey reports that the average cost of defending a patent infringement action involving a single patent in New York ranged from $3.66 Million to $6.19 Million. Ex. D.

for a court to recognize.") (Judge L. Hand).  Thus, not having all owners of a patent joined results in prejudice to both the defendant and the missing owner.

*Second:*  The burden is on plaintiff to suggest how relief can be shaped to lessen or avoid exposing a defendant to "suffering multiple liability if [another owner] were to relitigate the issues before the court and if it were not barred by the doctrine of collateral estoppel." *Water Techs.,* 576 F.Supp. at 770; see also *Messerschmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co.,* 483 F.Supp. 49, 53 (S.D.N.Y. 1979) ("[F]or this Court to require Hughes as defendant to join the licensors would incorrectly shift the burden of insuring that indispensable parties are before the Court form the plaintiff to the defendant.").  Furthermore, a court must take care that "[a]ny measures to lessen these prejudices would necessarily dilute the efficacy of the judgment sought."  *See Messerschmitt-Boelkow-Blohm,* 483 F.Supp. at 53.

*Third:*  When a patent owner is not present it "requires the court to consider the proprietary of granting incomplete relief to the present parties." *Water Techs.,* 576 F.Supp. at 770-71 (citation omitted).  This factor concerns the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.  *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111 (1968).  "[P]atent suits most often consume a great amount of court time due to their complexity and because there is a great public interest in determining the status of a patent once and for all, patent controversies, if possible, should be settled in a single action." *Water Techs.,* 576 F.Supp. at 771 (citations omitted).

*Fourth:*  Lastly, the Court must "inquire into 'whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.'" *Id.* (citing Fed. R. Civ. P. 19(b)).  For example, any missing patent owner must at least be approached by Plaintiff to see if they will voluntarily join the suit.  *Cf. id.* (citing *Independent Wireless Telegraph Co.,* 269 U.S. at 473).

5

Thus, as the Federal Circuit has stated: "An action for infringement must join as plaintiffs all co-owners." *Ethicon,* 135 F.3d at 1467 (citations omitted).

### C. All Patent Owners Must Be Joined or the Case Dismissed

A party having a joint ownership interest must, therefore, be joined. Fed. R. Civ. P. 19. If the joint owner is subject to process they must be joined in the action, if not, then dismissal is appropriate under Rule 12(b)(7). Joinder of a party under Rule 19(a) is feasible if the party is "subject to service of process." Personal jurisdiction in this action will be governed under New York C.P.L.R. § 302, New York's long arm statute. *See* Fed R. Civ. P. 4(e). Two requirements must be met for personal jurisdiction under C.P.L.R. § 302(a)(1): (1) The party must engage in business activities in New York which avail it of the benefits and protections of New York law; and (2) the cause of action must arise from those business activities. *Graphic Controls Corp. v. Utah Medical Prods.,* 149 F.3d 1382, 1386 (Fed. Cir. 1998) (citations omitted). The nexus between the cause of action and the parties contacts is interpreted very narrowly. *See Graphics Control,* 149 F.3d at 1386-87.

Since the joint owners of the '735 Patent and the '491 Patent, namely Micron and Mr. Jimenez Rodriguez, are necessary and indispensable parties and cannot be joined here, this case must be dismissed.

### III. DISMISSAL IS APPROPRIATE

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(7) because Tele-Guia's Complaint failed to comply with the requirements of Fed. R. Civ. P. 19. Neither of two missing joint owners of the '735 Patent and '491 Patent can be feasibly joined to the action, therefore the Complaint must be dismissed.

### A. Tele-Guia Is Not The Sole Assignee

1. <u>Micron is a Joint Owner of Both Patents</u>

Micron is a Delaware corporation having its principal place of business in Idaho. Micron has a joint ownership interest in both the '735 Patent and the '491 Patent. Two agreements recorded with the USPTO indicate that Micron has joint ownership interests in both the '735 Patent and '491 Patent. The first agreement is an assignment from Tele-Guia to Micron ("Micron Agreement"). Ex. E. The second agreement between Tele-Guia and Liberty Cablevision of Puerto Rico, Inc. ("Liberty") is a settlement agreement ("Liberty Agreement") relating to Liberty's alleged infringement of the '735 Patent and the '491 Patent. Ex. F. Both the Micron Agreement and the Liberty Agreement show that Tele-Guia is not the sole assignee of the '735 Patent and '491 Patent.

The Micron Agreement was executed on March 15, 1999 and recorded with the USPTO on November 9, 1999. Ex. E at 1. In the Micron Agreement, Tele-Guia expressly assigned a joint interest in the '491 Patent to Micron:

> ASSIGNOR hereby further acknowledges that it has sold, assigned, and transferred, and by these presents does hereby sell, assign and transfer, unto ASSIGNEE, its successors, legal representatives, and assigns, an undivided ownership interest throughout the world in, to, and under the said improvements, and the said Patent and all Patents that may be granted thereon, and all divisions, continuations, reissues, reexaminations, renewals, and extensions thereof, ... [6]

*Id.* at 2. The Micron Agreement assigned Micron an undivided joint interest and granted Micron the right to sue for past and future infringement in addition to an ownership interests in any future patents stemming from the '491 Patent. *Id.*

---

[6] The Micron Agreement defines "Patent" as being United States Patent No. 5,479,491. *Id.* The Micron Agreement also grants joint ownership rights in all future patents that stem from the '491 Patent. It is possible the referenced "Sales Agreement" could include rights to the '735 Patent because it is the parent of the '491 Patent.

7

The Liberty Agreement was executed on May 12, 2003 and recorded with the USPTO on May 28, 2003. Ex. F. The Liberty Agreement explicitly covers both the '735 Patent and '491 Patent and does not differentiate in its treatment of either patent. The Liberty Agreement defines "Patents" to include both the '735 Patent and '491 Patent and this definition is consistent throughout the agreement. *Id.* at ¶1.3. In paragraph 3.4 Micron is specifically mentioned in the context of third parties having an interest in the '735 Patent and '491 Patent in paragraph 3.4.[7] Paragraph 3.4 of the Liberty Agreement is an indemnity provision that states:

> Tele-Guia agrees to defend Liberty, and to indemnify Liberty against any damages, costs, or expenses, including legal fees, relating to any claim or action, not including the Lawsuit, concerning past, present or future infringement or violation of either or both of the Patents or any of the Related Patent Rights, which may be brought by any other party, including but not limited to Micron Technology, Inc and/or Carlos R. Jimenez Rodriguez. In the event it is determined that Micron Technology, Inc. and/or Carlos R. Jimenez has an interest in the Patents as defined herein, Tele-Guia hereby holds harmless Liberty for any claim that may be instated by Micron Technology and/or Carlos R. Jimenez Rodriguez related to the patent as herein defined or to a variant of the patent.

*Id.* at ¶3.4. Because paragraph 3.4 agrees to indemnify Liberty for any patent infringement action brought by Micron under the '735 Patent or '491 Patent, it is clear Micron has a joint ownership interest in the '735 Patent and/or '491 Patent.

### 2. Carlos R. Jimenez Rodriguez Is A Joint Owner of Both Patents

Carlos R. Jimenez Rodriguez is also a joint owner of both the '735 Patent and '491 Patent because of his mention in the Liberty Agreement. Mr. Jimenez Rodriguez is a named co-inventor of both the '735 Patent and the '491 Patent. *See* Ex. A & Ex. B. In addition, Mr.

---

[7] In paragraph 2.2 of the Liberty Agreement, Tele-Guia makes an explicit representation and warranty that both Micron and Mr. Jimenez Rodriguez have no claim against Liberty. *Id.* at ¶2.2. However, no explanation is provided as to why Tele-Guia believes that neither Micron nor Mr. Jimenez Rodriguez has any interest or why such representation and warranty would be necessary if Tele-Guia in fact owned an undivided interest in the '735 Patent and '491 Patent.

8

Jimenez Rodriguez is listed as one of only three officers of Tele-Guia. Ex. G & Ex. H.[8] Mr. Jimenez Rodriguez is also mentioned in the indemnity provision in the same manner as Micron, also with no differentiation in the treatment between either the '735 Patent or '491 Patent. Ex. F at ¶3.4. Paragraph 3.4 requires Tele-Guia to indemnify Liberty against any patent infringement suits brought by Mr. Jimenez Rodriguez under either the '735 Patent or '491 Patent. Because paragraph 3.4 agrees to indemnify Liberty for any patent infringement action brought by Mr. Jimenez Rodriguez, this protection would only be necessary if he had an ownership interest in the '735 Patent and/or '491 Patent.

### B. This Court Does Not Have Personal Jurisdiction Over The Joint Owners

Both Micron and Mr. Jimenez Rodriguez are outside the personal jurisdiction of this court. Micron is a Delaware Corporation with its principle place of business in Idaho (Ex. E) and Mr. Jimenez Rodriguez is a resident of Puerto Rico. Ex. G & Ex. H. There is no evidence that either party, in their capacities as patent owners, fulfills the requirements of personal jurisdiction under C.P.L.R. § 302(a)(1). *See, supra,* Section II.C.[9] There is no evidence that either Micron or Mr. Jimenez Rodriguez have engaged in any business activities with CSC in New York in their capacities as patent owners.

### C. Existence of Joint Owners Makes Dismissal Appropriate

Both Micron and Mr. Jimenez Rodriguez have joint ownership interests in both the '735 Patent and the '491 Patent, and neither party can be joined, dismissal of this action under Rule 12(b)(7) is appropriate. Micron's joint ownership interest in the patents-in-suit makes it a

---

[8] Ex. H is a certified English translation of Ex. G. Ex. G is the official Certificate of Incorporation for Tele-Guia from the Puerto Rico Department of State.

[9] This lack of personal jurisdiction does not preclude Tele-Guia from seeking the consent of Micron and Mr. Jimenez Rodriguez to a future infringement action if the Court grants CSC's request for dismissal without prejudice. *See, supra,* II.B.

necessary party under Rule 19(a). *See, supra,* Section III.A.1. Mr. Jimenez Rodriguez also has a joint ownership interest in the patents-in-suit making him a necessary party under Rule 19(a) as well. *See, supra,* Section III.A.2. However, joinder is not feasible for either party because neither party is subject to personal jurisdiction in New York for this action. *See, supra,* Section III.B.

The unfeasibility of their joinder makes dismissal appropriate because both are indispensable parties under the four Rule 19(b) factors. *See, supra*, Section II.B.[10] First, CSC's interest in not having to defend a second infringement action is greater than Tele-Guia's interest in maintaining the current action. *See, supra,* Section II.B. Also, Micron and Mr. Jimenez Rodriguez's interests in protecting their patent rights weighs against the continuation of this infringement action. *See id.* Second, Tele-Guia cannot meet its burden of showing how an adequate remedy could be crafted to protect CSC from potential liability in subsequent actions. *See id.* Third, the public interest in favor of complete litigation of all patent issues favors the joinder of all joint owners. *See id.* And fourth, Tele-Guia will have an adequate remedy if the action is dismissed with prejudice because they can refile with all joint owners joined as plaintiffs.[11]

## IV.    CONCLUSION

For all of the foregoing reasons, CSC respectfully requests the Court to dismiss without prejudice Tele-Guia's patent infringement action against CSC. Furthermore, CSC respectfully requests this Court to require Tele-Guia to provide adequate evidence of all joint ownership

---

[10] Even if the Court finds that it has appropriate personal jurisdiction over one of the joint patent owners, dismissal is still appropriate because all joint owners must be joined in an infringement action. *See Waterman*, 138 U.S. at 255; *see also, supra,* Section II.

[11] Even if the other owners fail to join, the case must be dismissed as "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Ethicon,* 135 F.3d at 1468 (citation omitted).

10

interests in both the '735 Patent and '491 Patent prior to the refiling any infringement action against CSC.

Dated: August 1, 2007                     Respectfully submitted,

  /s/ Benjamin Hershkowitz
Benjamin Hershkowitz (BH 7256)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800 (tel.)
(212) 355-3333 (fax)
bhershkowitz@goodwinprocter.com

Attorneys for Defendant
Cablevision Systems Corporation