UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
TELE-GUÍA TALKING YELLOW          :
PAGES, INC.                       :
                                  :
    Plaintiff,                 :
                                  :  Civil Case No.: 07-civ-3948-DLC
    v.                         :
                                  :  ECF CASE
CABLEVISION SYSTEMS               :
CORPORATION,                      :  TRIAL BY JURY DEMANDED
                                  :
    Defendant.                 :
------------------------------------------------------- X

**PLAINTIFF TELE-GUÍA TALKING YELLOW PAGES, INC.'S OPPOSITION TO
DEFENDANT CABLEVISION SYSTEMS CORPORATION'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY .......................................................... 2

II. RELEVANT BACKGROUND ................................................................... 4

III. ARGUMENT .............................................................................................. 7

    A. Cablevision's Burden of Persuasion ............................................. 7

    B. Under Applicable Law Micron Is Not An Indispensable Party Because It Is Not Permitted To Sue Cablevision On The '491 Patent And Owns No Interest In The '753 Patent ..................................................................... 8

        1. Tele Guía Owns the Sole Right to Enforce The '491 Patent Against Cablevision .................................................. 8

        2. The Liberty Agreement Has No Bearing Upon Micron's Ownership Interests in Either Patent ................................. 10

    C. Rodriguez Is Not An Indispensable Party Because He is Not A Co-Owner of Either The '491 Patent Or the '753 Patent .................................. 11

IV. CONCLUSION ......................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**..................................................................................................................**Page**

*Agilent Technologies, Inc. v. Miromuse, Inc.*, 2004 U.S. Dist. LEXIS 20723, (S.D.N.Y. October 19, 2004) ............................................................................................................... 9

*E-Z Bowz, L.L.C. v. Professional Product Research Co., Inc.*, 2003 U.S. Dist. LEXIS 15364, (S.D.N.Y. Sept. 5, 2003) .......................................................................................... 8

*International Business Machine Corp. v. Conner Peripherals, Inc.*, 1994 U.S. Dist. LEXIS 2884, (N.D. Cal. Jan. 28, 1994) ........................................................................... 10

*Michaels of Oregon Co. v. Mil-Tech, Inc.*, 1995 U.S. Dist. LEXIS 20875, (D. Oregon Oct. 17, 1995) ..................................................................................................................... 8

*Playskool, Inc. v. Famus Corp.*, 212 U.S.P.Q. 8, 1981 U.S. Dist. LEXIS 17729, (S.D.N.Y. July 15, 1981) ................................................................................................ 7, 11

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124 (1968) ............... 8

*Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891) ................................................................ 8

**Rules** ..................................................................................................................**Page**

Fed. R. Civ. P. 12(b)(7) ..................................................................................................... 7, 11

Fed. R. Civ. P. 19 ...................................................................................................................... 8

Fed. R. Civ. P. 19(a) ................................................................................................................. 9

Plaintiff Tele-Guía Talking Yellow Pages, Inc. ("Plaintiff" or "Tele-Guía") hereby opposes (this "Opposition") the motion to dismiss filed by defendant Cablevision Systems Corporation ("Defendant" or "Cablevision"). This Opposition is based upon the Memorandum set forth below, and upon the Declaration of Jeffrey M. Rollings and the documents annexed thereto, filed concurrently herewith.

## I.   INTRODUCTION AND SUMMARY

Cablevision moves to dismiss the complaint for patent infringement brought by Tele-Guía in this case (the "Motion"), on the grounds that two allegedly necessary and indispensable parties – Micron Technology, Inc. ("Micron") and inventor Carlos R. Jimenez Rodriguez ("Rodriguez") – cannot be joined under New York's long-arm jurisdictional statute. Cablevision's argument is a simple, connect-the-dots exercise: Micron and Rodriguez are co-owners of the patents-in suit; patent co-owners are always indispensable parties; if indispensable parties cannot be joined the case must be dismissed; and neither Micron nor Rodriguez can be joined. This argument is appealing in its simplicity, but it fails mostly because it is simply inaccurate. By seeking to paint dismissal as a *fait accompli* – a "no brainer" – Cablevision ignores contrary facts and makes broad assumptions that are completely unwarranted.

This case cannot be dismissed, in fact, because the co-owner of a patent-in-suit is only an indispensable party to such suit if the rights of the parties cannot be fairly adjudicated without the co-owner. That is not the case here. Where a co-owner has given up the right to sue on the patent, logic – and, as set forth below, recent case law in this Court – dictate that the co-owner need not be joined to protect the rights of the parties and that the co-owner is not indispensable.

This case also cannot be dismissed for a more fundamental reason: Micron is not a co-owner of one of the patents at issue, and Rodriguez is not a co-owner of either patent at issue.

2

Cablevision's argument that these two parties somehow "must" be co-owners because they are identified in an indemnity clause is specious at best – particularly in view of the fact that the agreement containing the indemnity clause also specifically disclaims the parties' rights in and to the patents at issue. Cablevision bears the burden of establishing, not insinuating, that Micron and Rodriguez are indispensable parties. In reality, it has done a poor job of insinuating.

Micron is not an indispensable party because it gave up its right to sue on one of the patents at issue in this case (collectively, the "Patents") – U.S. Patent No. 5,479,491 (the "'491 Patent") by written agreement in 1999, and because it has never acquired any rights to the remaining patent at issue, U.S. Patent No. 5,187,735 (the "'735 Patent"). The complete, "long form" assignment agreement between Tele-Guía and Micron specifically provides that Micron cannot sue on the '491 Patent. The assignment relied upon by Cablevision in its Motion is the "short form" of that agreement. Short form assignments, such as the one cited by Cablevision, are customarily used to record title transfers with the United States Patent and Trademark Office ("USPTO"). Cablevision brought its Motion during the beginning of settlement negotiations between the parties in this case, and it surely would have discovered this key fact had it not precipitously broke off the negotiations to file the Motion.

Micron is also not an indispensable party because it owns no rights in the '753 Patent. Cablevision has offered no documentary or other credible evidence that Micron has ever had such an interest. Cablevision states, as if it were *a priori* true, that Micron *must* be a co-owner of both Patents because of a 2003 settlement agreement in which Tele-Guía indemnifies Liberty Cablevision of Puerto Rico in the event Micron or Rodriguez (or any third party) sues Liberty for infringement of either Patent. This agreement, however, transfers no rights in either Patent to Micron (or to Rodriguez), and has no bearing on whether Micron is an indispensable party. It is

a complete red herring. Indeed, in the very same settlement agreement Tele-Guía expressly represents and warrants that neither Micron nor Rodriguez have the right to enforce the '491 Patent *or* the '735 Patent against Liberty Cablevision. This, of course, is perfectly consistent with the fact that Micron has never owned any rights to the '735 Patent, and the fact that its ownership of the '491 Patent is subject to Tele-Guía's exclusive rights to enforce that Patent against third parties.

Rodriguez, one of the two original inventors on the patents, gave up his right to sue on both the '491 and '735 Patents when he assigned all of his interests in the Patents to Tele-Guía. He has never re-claimed any of those rights. Cablevision argues that Rodriguez nevertheless *must* be a co-owner of the Patents because of Tele-Guía's agreement to indemnify Liberty. But as noted above, the settlement with Liberty transferred no rights in either Patent to Rodriguez and has no bearing on whether Rodriguez is an indispensable party. Cablevision ignores the fact that there are no documents recorded with the USPTO assigning back to Rodriguez any rights to either Patent. Cablevision has offered no assignment or other agreement as proof of Rodriguez's ownership in either Patent, and in fact no such agreement exists. Rodriguez is not a co-owner of either Patent, and is not indispensable to this case.

Cablevision's Motion must be denied.

## II.    **RELEVANT BACKGROUND**

The facts relevant to Cablevision's motion are as follows: The two patents-in-suit, the '735 Patent and the '491 Patent, were issued to Tele-Guía in 1993 and 1995, respectively. As of June, 1990, three months after filing their patent application for the '735 Patent, Rodriguez and Garcia had each assigned their interests in the '735 Patent, together with all continuations of such

4

Patent (which therefore includes the '491 Patent) to Tele-Guía. See Exhibits 1 and 2 to Declaration of Jeffrey M. Rollings ("Rollings Dec.").

On or about March 23, 1999, Tele-Guía assigned to Micron, by written agreement, an undivided, joint ownership interest in and to the '491 Patent (the "Micron Agreement"). See Rollings Dec. Exh. 3. The Micron Agreement expressly provides, however, that with the exception of one third-party to be designated by Micron, only Tele-Guía is authorized to enforce any rights and interests under the '491 Patent against third parties:

> TELE GUÍA grants to MTI [Micron], and agrees that MTI shall have, the exclusive right to enforce the rights and interests under the Patent against the Designated Party and/or its agents and representatives, including the right to collect for all damages resulting from infringement occurring prior to the Effective Date of this Agreement, and the right to grant prospective license and sublicenses to the Designated Party. MTI grants to TELE GUÍA, and agrees that TELE GUÍA shall have, the exclusive right to enforce the rights and interests under the Patent against third parties other than the Designated Party.

Rollings Dec. Exh. 3, at p. 3.

In accordance with the terms of the Micron Agreement, by letter dated March 25, 1999, Micron designated Lucent Technologies, Inc. ("Lucent") as the "Designated Party" – the only party Micron is permitted to sue for infringement of the '491 Patent. See Rollings Dec. Exh. 4. In November, 1999, Micron and/or Tele-Guía recorded with the United States Patent and Trademark Office ("USPTO") the short-form of the Micron Agreement that is annexed to the Micron Agreement as "Exhibit A." See Rollings Dec. Exh. 3 at Exhibit A. This is the assignment cited by Cablevision in its Motion. See Exh. E to Cablevision's Motion.[1]

---

[1] It is common practice for parties to a patent assignment agreement to execute a separate "short-form" assignment specifically for purposes of recordation at the Patent Office, so that the financial and other confidential portions of the original assignment agreement are not publicly disclosed and available.

5

On or about May 14, 2003, Tele-Guía settled a lawsuit with Liberty Cablevision of Puerto Rico, Inc. ("Liberty"). Tele-Guía and Liberty executed a settlement agreement (the "Liberty Agreement") pursuant to which Tele-Guía agreed to indemnify and hold Liberty harmless in the event of any action on either of the Patents by any party, "including but not limited to" Micron or Rodriguez. See Rollings Dec. Exh. 5, at ¶ 3.4. The Liberty Agreement did not and does not, however, purport in any way to transfer or assign any rights in and to either of the Patents to any party to the agreement, let alone to non-parties Micron or Rodriguez. Indeed, by contrast Tele-Guía represents and warrants in the Liberty Agreement that neither Micron nor Rodriguez own any rights to enforce the Patents against Liberty:

> 2.2   Tele-Guía represents and warrants that, as a result of the license granted in paragraph 3.5 of this Settlement Agreement no other party, including but not limited to Micron Technology, Inc. and/or Carlos R. Jimenez Rodriguez, (1) has any claim or any interest in any claim against Liberty relating to the Patents or any other Related Patents, Related Patent applications or Related Patent Rights, or (2) has the right to any remedies associated with the Patents for past, present or future violation of either of the Patents or any other Related Patents, Related Patent Applications or Related Patent Rights against Liberty.

Rollings Dec. Exh. 5 at p. 3. This paragraph is consistent with Micron's rights to the '491 Patent, which are expressly limited by the Micron Agreement, and with the fact that neither Micron nor Rodriguez own any rights to the '753 Patent.

As of the date of this Opposition, the only documentary evidence adduced by Plaintiff to support its Motion is the Micron Agreement and the Liberty Agreement. Neither of these documents, however, purport directly or indirectly to vest in either Micron or Rodriguez any rights in and to the '753 Patent. Neither of these documents purport to vest in Rodriguez any rights in and to the '491 Patent. And under the express terms of the Micron Agreement, which assigns a joint-ownership interest in the '491 Patent to Micron, Micron does not have the right to

6

enforce the '491 Patent against Cablevision. It is upon this factual record that Cablevision rests its assertion that Tele-Guía's complaint must be dismissed.

Cablevision bears the burden under Fed. R. Civ. P. 12(b)(7), however, to establish that Micron and Rodriguez are indispensable parties in this case. As it can point to no documentary or other evidence that establishes that either Micron or Rodriguez are co-owners of either Patent with standing to sue Cablevision, Cablevision has failed to carry its burden and the Motion must be denied.

### III. ARGUMENT

#### A. Cablevision's Burden of Persuasion

Cablevision bears the burden of persuading this Court that Micron and Rodriguez are indispensable parties. *See, e.g., Playskool, Inc. v. Famus Corp.*, 212 U.S.P.Q. 8, 1981 U.S. Dist. LEXIS 17729, at *8 (S.D.N.Y. July 15, 1981). And while a court may make pragmatic assessments regarding the issue of indispensability, the movant must provide the court with competent evidence to permit the court to accurately weigh, assess, and decide the issue. *Id.* As set forth below, Cablevision's proffer of "evidence" in this case consists of (i) a short-form of an assignment agreement that specifically provides that Micron is not an indispensable party with respect to one of the two Patents, and (ii) an agreement that suggests, in whole, that as of the date of such agreement neither Micron nor Rodriguez – the two allegedly "indispensable" parties – are co-owners with the right to enforce *either* Patent at issue in this matter.

Stated simply, Cablevision's Motion provides this Court with absolutely no grounds on which to rule that either Micron or Rodriguez is indispensable in this case. As a result, Cablevision's Motion must be denied.

7

**B.     Under Applicable Law Micron Is Not An Indispensable Party Because It Is Not Permitted To Sue Cablevision On The '491 Patent And Owns No Interest In The '753 Patent.**

   1.   *Tele-Guía Owns The Sole Right To Enforce The '491 Patent Against Cablevision.*

Cablevision's Motion recites and relies upon the old, general rule: all patent co-owners must join as plaintiffs in an infringement suit. *E.g.*, *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891); see Cablevision's Motion, at p. 3. The modern approach and rule, however, is more flexible and looks to whether, under a given set of circumstances, a patent co-owner is actually indispensable. "Since the introduction of *Fed. R. Civ. P. 19* and the 1966 amendments to the rule, …, 'courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of the patent co-owner.'" *E-Z Bowz, L.L.C. v. Professional Product Research Co., Inc.*, 2003 U.S. Dist. LEXIS 15364, at *11 (S.D.N.Y. Sept. 5, 2003) quoting *Michaels of Oregon Co. v. Mil-Tech, Inc.*, 1995 U.S. Dist. LEXIS 20875, at *1 (D. Oregon Oct. 17, 1995). As the United States Supreme Court stated as early as 1968:

> The decision whether to dismiss (i.e., the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. *Rule 19* does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it has examined the situation to determine whether it can proceed without him.

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124 (1968).

By the Supreme Court's clear logic, where a patent co-owner has given up his right to sue on the patent, a court should determine that it could proceed without him – that he is not "indispensable" – in an action on that patent. Indeed, this Court has reached precisely this conclusion: "[W]here the co-owner of a patent or other entity or individual whose interest in a patent might be directly affected by litigation has specifically disclaimed all interest in pursuing litigation related to the patent in favor of the party who has brought the suit, … joinder of the co-owner or other entity or individual is not necessary." *Agilent Technologies, Inc. v. Miromuse, Inc.*, 2004 U.S. Dist. LEXIS 20723, at *21 (S.D.N.Y. October 19, 2004).

This rule is entirely consistent with the enumerated factors set out in Fed. R. Civ. P. 19(a) for determining whether a missing party is indispensable. As this Court has summarized, those factors are (i) whether a party's absence will result in a situation where complete relief cannot be accorded among those already parties, and (ii) if the absent party claims an interest relating to the subject of the litigation, (a) whether the litigation will impair or impede the absent party's ability to protect such interest, and (b) whether the absent party will be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *See*, *E-Z Bowz, L.L.C.*, 2003 U.S. Dist. LEXIS at *14.

Where an absent patent co-owner has no right or ability to maintain an action on the patent, an action on the patent maintained by the only co-owner possessing the right to enforce the patent will provide complete relief. And a co-owner with no enforcement rights cannot claim an interest in a litigation that he is without right to prosecute or maintain, and from which he can derive no benefit. This Court has thus held that where an absent party is a patent co-owner with no right to enforce the patent, the Rule 19(a) factors are simply not implicated and the party is not indispensable. *See*, *E-Z Bowz, L.L.C.*, 2003 U.S. Dist. LEXIS at 14, *citing International*

*Business Machine Corp. v. Conner Peripherals, Inc.*, 1994 U.S. Dist. LEXIS 2884, at *6-7 (N.D. Cal. Jan. 28, 1994) (un-joined patent co-owner not subject to multiple or inconsistent obligations by suit on the patent where such co-owner gave up his right, by agreement, to sue infringers of the patent).

Because Micron gave up its right to enforce the '491 Patent against all but Lucent, and thus has no right to enforce the '491 Patent against Cablevision, Micron is clearly not an indispensable party to this case with respect to Tele-Guía's claims under the '491 Patent.

    2.    *The Liberty Agreement Has No Bearing Upon Micron's Ownership Interests In Either Patent.*

Cablevision asserts that Micron "must" be a co-owner of both the '491 Patent and the '753 Patent because the Liberty Agreement discloses that Tele-Guía has agreed to indemnify Liberty against potential claims by third parties, including possibly Micron, for infringement of both Patents. Nothing in the Liberty Agreement, however, purports to transfer any ownership interest in either Patent to Micron, or otherwise recites, recognizes, or acknowledges that Micron possesses any ownership interests. Indeed, Tele-Guía represents and warrants specifically in the Liberty Agreement that neither Micron nor Rodriguez has the right to seek any remedies under either Patent against Liberty. See Rollings Dec. Exh. 5 at p. 3. This representation is completely inconsistent with Cablevision's assertion that Micron must be a co-owner of both Patents, as such a co-owner would, as a matter of law absent agreement to the contrary, have standing to seek remedies under the Patents. *See, E-Z Bowz, L.L.C.*, 2003 U.S. Dist. LEXIS at 11. Stated otherwise, Tele-Guía represents *as existing fact* that neither Micron nor Rodriguez can claim under either Patent against Liberty. Were either of them actually co-owners of either Patent, this could not be true.

At very best, one might infer from the indemnity language as a whole that at the time the Liberty Agreement was executed in 2003, Liberty had some uncertainty as to whether Micron or Rodriguez might, at some point, claim or be granted some ownership interest in one or more of the Patents. Given that Micron was a co-owner of the '491 Patent (without the right to enforce the Patent), and that Rodriguez was a named inventor on both Patents, cautionary drafting on the part of Liberty's counsel is certainly understandable.

But Tele-Guía is a party to the Liberty Agreement, and it was aware in 2003 that the 1999 Micron Agreement granted Micron co-ownership of the '491 Patent but prevented it from suing or otherwise enforcing the '491 Patent. Tele-Guía's representation and warranty in paragraph 2.2 of the Liberty Agreement that Micron does *not* possess the right to enforce either Patent against Liberty is perfectly consistent with this fact. See Rollings Dec. Exh. 5 at p. 3. It defies all logic, therefore, to argue that the terms of the Liberty Agreement somehow require this Court to conclude that Micron is a full co-owner of the Patents. That argument is just not credible. It is simply not possible to conclude at all from the Liberty Agreement, let alone as a matter of law to sustain a motion to dismiss, that Micron is a co-owner of the '753 Patent, or has any right to enforce the '491 Patent.

As stated above, Cablevision bears the burden under Fed. R. Civ. P. 12(b)(7) of providing this Court with sufficient evidence to determine that Micron is an indispensable party. *E.g., Playskool, Inc. v. Famus Corp.*, 1981 U.S. Dist. LEXIS 17729, at *8. Based upon the foregoing, it is apparent that Cablevision has failed to sustain this burden.

### C. Rodriguez Is Not An Indispensable Party Because He Is Not A Co-owner Of Either The '491 Patent Or The '753 Patent.

Rodriguez is not an indispensable party for all of the reasons set for above in section B(2) of this Opposition related to Micron: to wit, the Liberty Agreement establishes nothing.

Rodriguez assigned all of his right, title, and interest in and to the Patents to Tele-Guía in 1990, just months after filing the patent application disclosing the invention of the '753 Patent with the USPTO. See Rollings Dec. Exhs. 1 and 2. Cablevision has provided to this Court not one scintilla of credible evidence that Rodriguez has re-acquired any of the rights that he assigned to Tele-Guía.

The Liberty Agreement, which Cablevision offers as proof that Rodriguez is a co-owner of both Patents, doesn't say that at all. What is does state unequivocally, in paragraph 2.2, is that Rodriguez and Micron were, as of the date of the Liberty Agreement, without power or right to enforce the '491 Patent or the '753 Patent against Liberty. The fact that Tele-Guía indemnifies Liberty against third-party actions on the Patents, including potential actions brought by Rodriguez and Micron (and any other third party who, at the time, owned no interest in either Patent) says nothing about Rodriguez's actual capacity to maintain such an action. At most, such language provides circumstantial evidence of caution on the part of Liberty's counsel, in view perhaps of the Micron Agreement and the fact that Rodriguez was one of the original named inventors on the Patents.

Based upon what is before this Court (and in fact), Rodriguez is not a co-owner of either of the Patents at issue. He is thus not indispensable to this case. Cablevision's offer of innuendo and supposition regarding the Liberty Agreement is plainly insufficient to even raise a credible issue on this point, let alone sustain a motion to dismiss on such grounds under Rule 12(b)(7).

## IV.   CONCLUSION

For all of the foregoing reasons, Tele-Guía respectfully submits that Cablevision has failed to establish, by any relevant evidentiary or other legal standard, that Tele-Guía has failed

to join any party indispensable to this case. Tele-Guía therefore respectfully requests that this Court deny Cablevision's Motion.

Dated: September 4, 2007
      Scarsdale, New York

                                  Respectfully submitted,

                                  **Lackenbach Siegel LLP**

By:   *[signature]*
                           Robert B. Golden (RG-6157)
                           Jeffrey M. Rollings (JR-6940)
                           One Chase Road
                           Scarsdale, New York 10583
                           (914) 723-4300
                           (914) 723-4301 fax

                           ***Attorneys for Plaintiff Tele-Guía***

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of each of the enclosed

**PLAINTIFF TELE-GUÍA TALKING YELLOW PAGES, INC.'S OPPOSITION TO DEFENDANT CABLEVISION SYSTEMS CORPORATION'S MOTION TO DISMISS**

and

**DECLARATION OF JEFFREY M. ROLLINGS IN SUPPORT OF PLAINTIFF TELE-GUÍA TALKING YELLOW PAGES, INC.'S OPPOSITION TO DEFENDANT CABLEVISION SYSTEMS CORPORATION'S MOTION TO DISMISS**

were served on Defendant Cablevision Systems Corporation on September 4, 2007, via U.S. 1st Class Mail and via electronic mail, addressed to counsel for Defendant as follows:

> Benjamin Hershkowitz, Esq.
> Goodwin Procter LLP
> 599 Lexington Avenue
> New York, New York 10022
> bhershkowitz@goodwinprocter.com

and via electronic filing which will send electronic copies of the enclosed to counsel of record.

Dated: Scarsdale, New York
September 4, 2007

*Nicole Saraco*
Nicole Saraco