# EXHIBIT 3

## ASSIGNMENT AND AGREEMENT

This Assignment and Agreement ("Agreement") is made as of the date of the last signature below ("Effective Date"), between Tele Guia Talking Yellow Pages, Inc., a Puerto Rico Corporation having an office at 504 (Altos) Francisco Seinz Street, Hato Rey, PR 00918 ("TELE GUIA"), and MICRON TECHNOLOGY INC., a Delaware Corporation with an office at 8000 South Federal Way, Boise, ID 83706 ("MTI").

Whereas TELE GUIA is the owner of certain United States Letters Patent as defined below;

Whereas MTI desires to purchase an undivided joint ownership interest in the subject Patent; and

Whereas MTI and TELE GUIA desire to set forth their agreement concerning the enforcement of the jointly owned rights in the Patent;

NOW, THEREFORE, TELE GUIA and MTI hereby agree to the following:

1.    DEFINITIONS

1.1    "Patent" shall mean United States Letters Patent Number 5,479,491 ('491), including all divisions, continuations, continuations-in-part, reissues and reexaminations thereof and all pending applications therefor which claim priority from the '491 patent or from which the '491 patent is derived, as well as all foreign counterparts of said United States Patent and applications thereof and all pending foreign applications therefor which claim priority from the '491 patent or patent applications.

1.2    "Designated Party" shall mean any entity, including any Subsidiary or division of the foregoing, which is selected at the sole discretion of MTI. The term "Designated Party" shall further include any joint venture, spin-off, division, or Subsidiary formed from or created by the Designated party on or after the Effective Date.

1.3    "Parent of the Designated Party" shall mean any entity directly from which the Designated Party was created, derived, or spun off, and which was in existence before the Effective Date.

1.4    "Subsidiary" of a party shall mean a corporation or other legal entity (i) the majority of whose shares or other securities entitled to vote for election of directors (or other managing authority) is now or hereafter owned or controlled by such party or its Subsidiary, either directly or indirectly; or (ii) the majority of the equity interest in which is now or hereafter owned or controlled by such party or its Subsidiary, either directly or indirectly, but any such corporation or other legal

-1-

entity shall be deemed to be a Subsidiary of such party only so long as such ownership or control exists.

1.5 "Direct spin-off" shall mean any business entity created by, from, or in cooperation with, and which benefits from the assets or goodwill associated with, the Designated Party.

2. REPRESENTATIONS AND WARRANTIES

2.1 TELE GUIA represents and warrants that it is sole owner of the Patent, that TELE GUIA has not previously granted any interest in the Patent to any third party and that TELE GUIA has the full right and capacity to assign an undivided, joint ownership interest in the Patent to MTI, and to enter into and carry out its obligations under this Agreement, without conflicting with any other obligation of TELE GUIA.

2.2 TELE GUIA represents and warrants that it has not granted any assignment or license in and to the Patent to any party as of the Effective Date. TELE GUIA further agrees that it will not, without prior written permission from MTI, provide a license, or grant any interest whatsoever under the Patent to any party prior to MTI's designation of the Designated Party, and that after such designation by MTI, TELE GUIA shall not grant any interest, license or rights of any nature to the Designated Party.

2.3 MTI agrees that it will not, without the prior written permission from TELE GUIA, which permission may be withheld for any reason or no reason, provide a license, or grant any interest under the Patent to any party other than the Designated Party.

2.4 TELE GUIA represents and warrants that it has not licensed the Designated party under the Patent, and will not in the future offer any licenses or other rights under the Patent which include the right of the licensee to offer sublicenses to the Designated Party.

2.5 MTI represents and warrants that it has not licensed, and will not offer any licenses or other rights under the Patent which include the right of the licensee to offer sublicenses to parties other than the Designated Party.

2.6 TELE GUIA represents and warrants that in the event the Designated Party acquires TELE GUIA or any interest therein, whether by acquisition, merger, or any other means, the Designated Party shall have no rights of any kind in the Patent or in the enforcement thereof against any party.

2.7    TELE GUIA represents and warrants that the Patent has not been abandoned for failure to pay maintenance or any other fees required by the United States Patent and Trademark Office or the patent authority of any other country.

2.8    TELE GUIA represents and warrants that it has never stated or represented by actions or other conduct to any party that TELE GUIA will not enforce, or that any party is free to practice the invention set forth in the Patent without fear of recourse from TELE GUIA.

2.9    TELE GUIA represents and warrants that as of the Effective Date, it is aware of no fraud, misrepresentation, or failure to disclose information material to patentability per 37 C.F.R. §1.56 associated with the Patent or its prosecution which would render the patent invalid.

3.    ASSIGNMENT AND CONSIDERATION

3.1    TELE GUIA agrees to assign, and hereby does assign, to MTI an undivided, joint ownership interest in and to the Patent including the right to make, have made, use, import, and sell products covered under the Patent. Concurrently with the execution of this Agreement, TELE GUIA shall execute an Assignment Document for the Patent in the form attached hereto as Exhibit A. In the event of any conflict between the provisions of this Agreement and Exhibit A, the provisions of this Agreement shall take precedence. It is understood that MTI shall be responsible for all costs and expenses associated with the recordation of the Assignment Document.

3.2    TELE GUIA grants to MTI, and agrees that MTI shall have, the exclusive right to enforce the rights and interests under the Patent against the Designated Party and/or its agents and representatives, including the right to collect for all damages resulting from infringement occurring prior to the Effective Date of this Agreement, and the right to grant prospective licenses and sublicenses to the Designated Party. MTI grants to TELE GUIA, and agrees that TELE GUIA shall have, the exclusive right to enforce the rights and interests under the Patent against third parties other than the Designated Party. TELE GUIA agrees that any royalties derived from MTI's licensing or enforcement efforts against the Designated Party shall be the sole property of MTI. TELE GUIA further agrees that any royalties derived from MTI's licensing or enforcement efforts against the Parent of the Designated Party shall be apportioned as set forth in paragraph 3.3.2 below. MTI agrees that any royalties derived from TELE GUIA's licensing or enforcement efforts shall be the sole property of TELE GUIA, other than as set forth in paragraphs 4.7, 4.8 or 4.9 of this Agreement. TELE GUIA further agrees that in the event the Designated Party is acquired by or merged with another entity on or after the Effective Date, MTI shall have, the exclusive right to enforce the rights and interests under the Patent against the said entity and/or its agents and representatives, including the right to collect for all damages resulting from infringement by the Designated Party occurring prior to

-3-

the date of the merger or acquisition, and the right to grant prospective licenses and sublicenses to said entity; provided, however, that MTI agrees to pay to TELE GUIA                              of any royalties, damages or settlement amounts directly attributable to the licensing or enforcing of MTI's rights under the Patent against said entity.

    3.2.1  MTI agrees that it shall formally confirm the identify the Designated Party and that of the Parent of the Designated Party in writing to TELE GUIA within one (1) business day of the Effective Date of this Agreement.

    3.2.2  TELE GUIA agrees that in the event the Designated Party acquires TELE GUIA or any interest therein, whether by acquisition, merger, or any other means, the Designated Party shall have no rights of any kind in the Patent or in the enforcement thereof against any party.

3.3    In consideration of the assignment of an undivided joint ownership interest in the Patent to MTI, MTI agrees to the following:

    3.3.1  MTI agrees to pay TELE GUIA the sum of ⁽                              ⁾ U.S., payable by check delivered by overnight mail or wire transfer within three (3) business days after the Effective Date of this Agreement.  TELE GUIA shall direct MTI in writing within one (1) business day of the Effective Date as to the manner in which such payment shall be made.

    3.3.2    MTI agrees to pay to TELE GUIA                              of any royalties, damages or settlement amounts directly attributable to the licensing or enforcing of MTI's rights under the Patent against the Parent of the Designated Party. This obligation to pay a percentage of royalties, damages or settlement amounts shall not apply when MTI, in its sole discretion, licenses said Patent on a royalty free basis, includes said Patent in a royalty free cross license, licenses said Patent in a cross license that requires net payments from MTI to a third party, or uses such Patent to offset other patent royalty demands or obligations asserted against MTI by a third party.  The obligation to pay royalties, damages or settlement amounts as defined in this Paragraph 3.3.2 shall be strictly limited to any royalties, damages or settlement amounts paid to MTI by the Parent of the Designated Party having clear allocation to the Patent.  Nothing in this paragraph shall obligate MTI in any way to pay any royalties, damages, or settlement amounts to TELE GUIA which were paid to MTI by, or otherwise obtained by MTI from, the Designated Party or which were paid as a consequence of activities of the Designated Party.

-4-


REDACTED

4.    MISCELLANEOUS

4.1    TELE GUIA agrees to consult and cooperate with MTI on all matters relating to the protection of intellectual property embodied in the Patent, such consultation and cooperation including, without limitation, (i) promptly providing copies to MTI of all correspondence between TELE GUIA, patent counsel, and U.S. and/or foreign patent authority; (ii) inclusion of MTI or its legal representative in the formulation of strategies and/or actions related to the prosecution or defense of the Patent; and (iii) reasonable access to all patent counsel of TELE GUIA handling matters related to the prosecution or defense of the Patent.

4.1.1    For the purposes of paragraph 4.1, reasonable access to all patent counsel of TELE GUIA as set forth in item (iii) of paragraph 4.1 above shall be interpreted to require MTI to pay any actual fees associated with MTI's access to TELE GUIA's patent counsel; provided, however, that (a) MTI shall only be liable for those fees which are directly attributable to MTI's affirmative inquiries and/or requests for information, and (b) MTI shall not be liable for costs associated with TELE GUIA's compliance under items (i) and (ii) of paragraph 4.1 of this Agreement including, without limitation, costs associated with providing copies of correspondence to MTI, or costs associated with TELE GUIA's formulation of its intellectual property strategy.

4.2    TELE GUIA agrees to provide, at MTI's request and expense (including reasonable per-diem solely for inventors named on the Patent), reasonable assistance to MTI in investigating or enforcing the Patent, including, without limitation, providing MTI with access to files, inventor's notes and other documentation in the TELE GUIA's possession or control and allowing MTI to interview inventors who are, at the time of any such investigation, employees of TELE GUIA.    MTI further agrees to represent TELE GUIA in any legal action instituted by MTI or the Designated Party related to the Patent to which MTI is a party, including reasonable costs approved in advance by MTI; provided, however, that (i) MTI shall not be liable to TELE GUIA for any costs related to TELE GUIA's retention of separate counsel, and (ii) MTI shall not be liable for any representation of (or payment of costs or fees to) any third party which acquires TELE GUIA's remaining undivided joint interest in the Patent (or any portion thereof). Except as expressly provided herein, MTI assumes no liability for direct or consequential damages relating to any action by or against TELE GUIA (or its assignees or successors in interest) or with respect to any enforcement or other proceeding.

4.2.1    In the event that TELE GUIA is required under Rule 19 or other rules of civil procedure to be joined as a party to any action instituted by MTI, TELE

-5-

GUIA agrees to cooperate fully with MTI and submit itself to the jurisdiction of the court before which such action is pending.

4.2.2   In the event that damages or attorney's fees are assessed jointly and severally against MTI and TELE GUIA in any action relating to MTI's enforcement efforts with respect to the Patent, MTI agrees to assume liability for payment of such damages and fees, except to the extent that such damages and fees result from TELE GUIA's conduct, action, or inaction, or with respect to a separate and independent claim against TELE GUIA.

4.2.3   In the event that TELE GUIA is purchased or acquired by a third party other than the Designated Party, MTI agrees to represent said third party in any legal action instituted by MTI or the Designated Party related to the Patent to which MTI is a party, including payment of reasonable costs approved in advance by MTI; provided, however, that (i) MTI shall not be liable to said third party for any costs related to the third party's retention of separate counsel, and (ii) MTI shall not be liable for any costs additional to those costs reasonably expected to be incurred by MTI in its representation of TELE GUIA in the same legal action under paragraph 4.2 above had TELE GUIA not been purchased or acquired by said third party.



4.2.4   In the event that TELE GUIA is purchased or acquired by the Designated Party, MTI shall not be liable for legal representation (or any costs or fees relating thereto) to TELE GUIA, the Designated Party, or any related entity formed therefrom.

4.3     Except for recording the Assignment Document (as described in Paragraph 3.1) with the appropriate patent authorities, MTI and TELE GUIA both agree to keep in confidence and not to disclose to any third party the terms and conditions of this Agreement; provided, however, that (i) either party may disclose such terms with the prior written permission of the other party or to the extent it is required to do so by order of a court of competent jurisdiction, and (ii) TELE GUIA may disclose pursuant to negotiations and under a non-disclosure agreement (NDA) with a third party other than the Designated Party who has expressed a bona fide interest in the sale or licensing of TELE GUIA's remaining ownership interest in the Patent, only the fact that the right to license the Designated Party under the Patent has been transferred to MTI, and that MTI retains the right to manufacture products (or have products manufactured) under the Patent.

4.3.1   TELE GUIA and MTI further agree that TELE GUIA may disclose under NDA only a redacted version of this Agreement in the form of Exhibit B, attached hereto, to any bona fide purchaser which has reached written agreement with TELE GUIA on all or substantially all terms regarding the

purchase of the remaining undivided joint interest in the patent at the time of disclosure.

4.3.2   TELE GUIA and MTI also agree that TELE GUIA may disclose under NDA this Agreement in its entirety to any bona fide purchaser which has reached written agreement with TELE GUIA on all or substantially all terms regarding the sale or acquisition of TELE GUIA by said bona fide purchaser.

4.3.3   Nothing in this Agreement shall be construed to in any way give TELE GUIA or its legal representatives the right to identify MTI as the co-owner of the Patent to any party, or to disclose the Agreement (or any part thereof) to any party, except as explicitly provided herein.



4.3.4   MTI agrees that it shall disclose to TELE GUIA information it obtains after the Effective Date regarding the validity of the Patent and the construction of claims therein, such information to be held in confidence in accordance with the provisions of Section 4.3 of this Agreement, and disclosed to TELE GUIA within a reasonable period of time after being obtained by MTI.  MTI further agrees that it shall, absent any bar or prohibition by a court of competent jurisdiction or other confidentiality obligation, disclose to TELE GUIA the relevant terms of any settlement agreement it reaches with the Designated Party within a reasonable period after such settlement agreement becomes effective. Nothing under this Section 4.3.4 shall obligate MTI to disclose to TELE GUIA or any other party information relating to its assertion or defense of the patent including, without limitation, litigation documents, attorney work product, settlement proposals, licensing offers or counter-offers, or correspondence.

4.4   Any notice, report, statement, request or other communication required or permitted under this Agreement shall be in writing and shall be deemed to have been given when received by the party to which such communication is directed at its address set forth below or at such other address as such party may have therefore designated in writing to the other party hereto.  A receipt evidencing delivery of certified or registered mail shall constitute evidence of receipt.  Any notice requiring prompt action shall be contemporaneously sent by facsimile transmission.

4.5   In the event that TELE GUIA elects not to pay a future maintenance fee on the Patent, or not to prosecute any continuation, divisional, reissue, or foreign application associated therewith, TELE GUIA shall give MTI notice of this election at least sixty (60) days prior to the due date of such maintenance fee, or to any other due date wherein such election would cause potential injury to rights

under the Patent or application and, at MTI's election, shall assign all of its interest in the Patent to MTI.

4.6     MTI and TELE GUIA each agree that neither party will consent or stipulate that the Patent (or any part thereof) is invalid or unenforceable in any action, settlement, or negotiation relating to the Patent without written permission by the other party.

4.7     If the Patent is held unenforceable with respect to the Designated Party due to fraud, gross misrepresentation, or failure to disclose information material to the patentability per 37 C.F.R. §1.56, then TELE GUIA agrees to reimburse MTI the entire consideration _____ paid to it by MTI as set forth Section 3.3 of this Agreement.

4.8     If the Patent is found to be licensed to the Designated Party at any time, then TELE GUIA agrees to reimburse MTI the entire consideration _____ paid to it by MTI under Section 3.3 of this Agreement.



4.9     If the Patent is declared invalid or unenforceable in any action brought by TELE GUIA against any third party prior to the time MTI has settled with the Designated Party, then TELE GUIA agrees to reimburse MTI the entire consideration paid to it by MTI under Section 3.3 of this Agreement; provided, however, that the obligation of TELE GUIA to reimburse MTI under this Section 4.9 shall expire three (3) years from the Effective Date.

4.10    Except as provided in paragraphs 4.7, 4.8, and 4.9 of this Agreement, TELE GUIA assumes no liability for consequential damages, and direct damages shall be deemed to be liquidated by the aforementioned paragraphs. Nothing in this paragraph shall deny MTI the right to seek specific performance of any obligation of TELE GUIA set forth in, or relating to, this Agreement.

4.11    Notices to TELE GUIA shall be sent to:

Mr. José E. Herrero-García
President
Tele Guia Talking Yellow Pages, Inc.
504 (Altos) Francisco Seinz Street
Hato Rey, PR 00918

Notices to MTI shall be sent to:

Roderic L. Lewis
Vice President
General Counsel and Corporate Secretary

REDACTED

Micron Technology Inc.
8000 South Federal Way
Boise, ID 83706

4.12    This Agreement sets forth the entire understanding between TELE GUIA and MTI and supersedes all previous understandings, agreements, communications and representations, whether written or oral, concerning the subject matter to which this Agreement relates.

4.13    The terms and conditions of this Agreement shall be governed by and interpreted under the laws of the State of California without giving effect to its internal principles of conflicts of laws and may not be superseded, amended or modified except by written agreement between the parties. Any litigation brought by MTI under this Agreement shall be brought exclusively in the state or federal courts located in Puerto Rico. Any litigation brought by TELE GUIA under this Agreement shall be brought exclusively in the state or federal courts located in Idaho.

4.14    If any provisions, or portion thereof, of this Agreement, or application thereof to any person, place, or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as otherwise applied shall remain in full force.

4.15    This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, all of which constitute one and the same Agreement.


IN WITNESS WHEREOF, this Agreement has been executed by duly authorized representatives of the parties on the date below.

MICRON TECHNOLOGY INC.                TELE GUIA TALKING YELLOW PAGES, INC.

By: _____        By: _____

Printed Name: Roderic W. Lewis       Printed Name: José E. Herrero-García

          VP of Legal Affairs,
Title: General Counsel and Corp. Sec.  Title: President

Date: 3-23-99                        Date: 3-15-99


STATE OF Puerto Rico )

PATENT

Page 1

EXHIBIT A
ASSIGNMENT

WHEREAS, TELE GUIA TALKING YELLOW PAGES, INC., a/an Puerto Rico corporation having offices at 504 (Altos) Francisco Seinz Street, Hato Rey, PR 00918 (hereinafter "ASSIGNOR"), represents and warrants that it is the sole owner of the entire right, title, and interest to certain new and useful improvements for which ASSIGNOR has filed the following United States issued Letters Patent in the United States (hereinafter "the Patent"):

| Patent No. | Issue Date | Title |
|---|---|---|
| 5,479,491 | December 26, 1995 | Integrated Voice-Mail Based Voice and Information Processing System |

WHEREAS, MICRON TECHNOLOGY, INC., a Delaware corporation having offices at 8000 South Federal Way, Boise, ID 83706 (hereinafter "ASSIGNEE") desires to purchase an undivided joint ownership interest in and to the inventions disclosed in the Patent;



NOW, THEREFORE, in consideration of                    to ASSIGNOR, and other good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNOR hereby further acknowledges that it has sold, assigned, and transferred, and by these presents does hereby sell, assign, and transfer, unto ASSIGNEE, its successors, legal representatives, and assigns, an undivided ownership interest throughout the world in, to, and under the said improvements, and the said Patent and all Patents that may be granted thereon, and all divisions, continuations, reissues, reexaminations, renewals, and extensions thereof, and all rights of priority under International Conventions and applications for Letters Patent that may hereafter be filed for said improvements or for the said Patent in any country or countries foreign to the United States; and ASSIGNOR hereby authorizes and requests the Commissioner of Patents of the United States, and any Official of any country foreign to the United States, whose duty it is to issue patents on applications as aforesaid, to issue an undivided joint ownership interest in and to all Letters Patent for said improvements and all Letters Patents resulting from the Patent to ASSIGNEE, its successors, legal representatives, and assigns, in accordance with the terms of this Agreement.

ASSIGNOR does hereby sell, assign, transfer, and convey to ASSIGNEE, its successors, legal representatives, and assigns claims for damages and remedies arising out of any violation of the rights assigned hereby that may have accrued prior to the date of assignment to ASSIGNEE, or may accrue hereafter, including, but not limited to, the right to sue for, collect, and retain damages for past infringements of the said issued Letters Patent, as set forth in the Sales Agreement between the parties relating to the Patent;



ASSIGNOR hereby covenants and agrees that it will communicate to ASSIGNEE, its successors, legal representatives, and assigns any facts known to ASSIGNOR respecting the Patent immediately upon becoming aware of those facts, and that it will testify in any legal proceeding involving the Patent, will sign all lawful papers, execute all divisional, continuing, and reissue applications, make all rightful oaths, and will generally do everything possible to aid ASSIGNEE, its successors, legal representatives, and assigns to obtain and enforce the Patent in all countries.

IN TESTIMONY WHEREOF, I hereunto set my hand and seal this 15 day of March, 1999.

TELE GUIA TALKING YELLOW PAGES, INC.

By: _José P. Herrero_____

Name Printed: José E. Herrero-García_____

Title: President_____

Date: 3-15-99_____

STATE OF Puerto Rico )

AFFIDAVIT NO. 71____

COUNTY OF _____ )   ) ss.

Acknowledge and subscribed on this 15th day of March, 1999, before me personally appeared Jose E. Herrero-García, of legal age, single, inventor and resident of San Juan, Puerto Rico to me known to be the President of TELE GUIA TALKING YELLOW PAGES the corporation that executed the within and foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he was authorized to execute said instrument.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
(Signature)

Notary public in and for the State of Puerto Rico

**EXHIBIT B**
**REDACTED ASSIGNMENT AND AGREEMENT**

This Assignment and Agreement ("Agreement") is made as of the date of the last signature below ("Effective Date"), between Tele Guia Talking Yellow Pages, Inc., a Puerto Rico Corporation having an office at 504 (Altos) Francisco Seinz Street, Hato Rey, PR 00918 ("TELE GUIA"), and MICRON TECHNOLOGY INC., a Delaware Corporation with an office at 8000 South Federal Way, Boise, ID 83706 ("MTI").

Whereas TELE GUIA is the owner of certain United States Letters Patent as defined below;

Whereas MTI desires to purchase an undivided joint ownership interest in the subject Patent; and

Whereas MTI and TELE GUIA desire to set forth their agreement concerning the enforcement of the jointly owned rights in the Patent;

NOW, THEREFORE, TELE GUIA and MTI hereby agree to the following:

1. DEFINITIONS

1.1    "Patent" shall mean United States Letters Patent Number 5,479,491 ('491), including all divisions, continuations, continuations-in-part, reissues and reexaminations thereof and all pending applications therefor which claim priority from the '491 patent or from which the '491 patent is derived, as well as all foreign counterparts of said United States Patent and applications thereof and all pending foreign applications therefor which claim priority from the '491 patent or patent applications.

1.2    "Designated Party" shall mean any entity, including any Subsidiary or division of the foregoing, which is selected at the sole discretion of MTI. The term "Designated Party" shall further include any joint venture, spin-off, division, or Subsidiary formed from or created by the Designated party on or after the Effective Date.

1.3    "Parent of the Designated Party" shall mean any entity directly from which the Designated Party was created, derived, or spun off, and which was in existence before the Effective Date.

1.4    "Subsidiary" of a party shall mean a corporation or other legal entity (i) the majority of whose shares or other securities entitled to vote for election of directors (or other managing authority) is now or hereafter owned or controlled by such party or its Subsidiary, either directly or indirectly; or (ii) the majority of the equity interest in which is now or hereafter owned or controlled by such party or

-1-

its Subsidiary, either directly or indirectly, but any such corporation or other legal entity shall be deemed to be a Subsidiary of such party only so long as such ownership or control exists.

1.5    "Direct spin-off" shall mean any business entity created by, from, or in cooperation with, and which benefits from the assets or goodwill associated with, the Designated Party.

## 2.    REPRESENTATIONS AND WARRANTIES

2.1    TELE GUIA represents and warrants that it is sole owner of the Patent, that TELE GUIA has not previously granted any interest in the Patent to any third party and that TELE GUIA has the full right and capacity to assign an undivided, joint ownership interest in the Patent to MTI, and to enter into and carry out its obligations under this Agreement, without conflicting with any other obligation of TELE GUIA.

2.2    TELE GUIA represents and warrants that it has not granted any assignment or license in and to the Patent to any party as of the Effective Date.  TELE GUIA further agrees that it will not, without prior written permission from MTI, provide a license, or grant any interest whatsoever under the Patent to any party prior to MTI's designation of the Designated Party, and that after such designation by MTI, TELE GUIA shall not grant any interest, license or rights of any nature to the Designated Party.



2.3    MTI agrees that it will not, without the prior written permission from TELE GUIA, which permission may be withheld for any reason or no reason, provide a license, or grant any interest under the Patent to any party other than the Designated Party.

2.4    TELE GUIA represents and warrants that it has not licensed the Designated party under the Patent, and will not in the future offer any licenses or other rights under the Patent which include the right of the licensee to offer sublicenses to the Designated Party.

2.5    MTI represents and warrants that it has not licensed, and will not offer any licenses or other rights under the Patent which include the right of the licensee to offer sublicenses to parties other than the Designated Party.

2.6    TELE GUIA represents and warrants that in the event the Designated Party acquires TELE GUIA or any interest therein, whether by acquisition, merger, or any other means, the Designated Party shall have no rights of any kind in the Patent or in the enforcement thereof against any party.

2.7     TELE GUIA represents and warrants that the Patent has not been abandoned for failure to pay maintenance or any other fees required by the United States Patent and Trademark Office or the patent authority of any other country.

2.8     TELE GUIA represents and warrants that it has never stated or represented by actions or other conduct to any party that TELE GUIA will not enforce, or that any party is free to practice the invention set forth in the Patent without fear of recourse from TELE GUIA.

2.9     TELE GUIA represents and warrants that as of the Effective Date, it is aware of no fraud, misrepresentation, or failure to disclose information material to patentability per 37 C.F.R. §1.56 associated with the Patent or its prosecution which would render the patent invalid.

3.     ASSIGNMENT AND CONSIDERATION

3.1     TELE GUIA agrees to assign, and hereby does assign, to MTI an undivided, joint ownership interest in and to the Patent including the right to make, have made, use, import, and sell products covered under the Patent. Concurrently with the execution of this Agreement, TELE GUIA shall execute an Assignment Document for the Patent in the form attached hereto as Exhibit A. In the event of any conflict between the provisions of this Agreement and Exhibit A, the provisions of this Agreement shall take precedence.  It is understood that MTI shall be responsible for all costs and expenses associated with the recordation of the Assignment Document.

3.2     TELE GUIA grants to MTI, and agrees that MTI shall have, the exclusive right to enforce the rights and interests under the Patent against the Designated Party and/or its agents and representatives, including the right to collect for all damages resulting from infringement occurring prior to the Effective Date of this Agreement, and the right to grant prospective licenses and sublicenses to the Designated Party. MTI grants to TELE GUIA, and agrees that TELE GUIA shall have, the exclusive right to enforce the rights and interests under the Patent against third parties other than the Designated Party. TELE GUIA agrees that any royalties derived from MTI's licensing or enforcement efforts against the Designated Party shall be the sole property of MTI. TELE GUIA further agrees that any royalties derived from MTI's licensing or enforcement efforts against the Parent of the Designated Party shall be apportioned as set forth in paragraph 3.3.2 below. MTI agrees that any royalties derived from TELE GUIA's licensing or enforcement efforts shall be the sole property of TELE GUIA, other than as set forth in paragraphs 4.7, 4.8 or 4.9 of this Agreement. TELE GUIA further agrees that in the event the Designated Party is acquired by or merged with another entity on or after the Effective Date, MTI shall have have, the exclusive right to enforce the rights and interests under the Patent against the said entity and/or its agents and representatives, including the right to collect for all damages resulting from infringement by the Designated Party

-3-

occurring prior to the date of the merger or acquisition, and the right to grant prospective licenses and sublicenses to said entity; provided, however, that MTI agrees to pay to TELE GUIA                                    of any royalties, damages or settlement amounts directly attributable to the licensing or enforcing of MTI's rights under the Patent against said entity.

3.2.1   MTI agrees that it shall formally confirm the identify the Designated Party and that of the Parent of the Designated Party in writing to TELE GUIA within one (1) business day of the Effective Date of this Agreement.

3.2.2   TELE GUIA agrees that in the event the Designated Party acquires TELE GUIA or any interest therein, whether by acquisition, merger, or any other means, the Designated Party shall have no rights of any kind in the Patent or in the enforcement thereof against any party.

3.3   In consideration of both the assignment of an undivided joint ownership interest in the Patent to MTI, MTI agrees to the following:

3.3.1   MTI agrees to pay TELE GUIA ...

3.3.2   MTI agrees to pay to TELE GUIA ...

## 4.   MISCELLANEOUS

4.1   TELE GUIA agrees to consult and cooperate with MTI on all matters relating to the protection of intellectual property embodied in the Patent, such consultation and cooperation including, without limitation, (i) promptly providing copies to MTI of all correspondence between TELE GUIA, patent counsel, and U.S. and/or foreign patent authority; (ii) inclusion of MTI or its legal representative in the formulation of strategies and/or actions related to the prosecution or defense of the Patent; and (iii) reasonable access to all patent counsel of TELE GUIA handling matters related to the prosecution or defense of the Patent.

4.1.1   For the purposes of paragraph 4.1, reasonable access to all patent counsel of TELE GUIA as set forth in item (iii) of paragraph 4.1 above shall be interpreted to require MTI to pay any actual fees associated with MTI's access to TELE GUIA's patent counsel; provided, however, that (a) MTI shall only be liable for those fees which are directly attributable to MTI's affirmative inquiries and/or requests for information, and (b) MTI shall not be liable for costs associated with TELE GUIA's compliance under items (i) and (ii) of paragraph 4.1 of this Agreement including, without limitation, costs associated with providing copies of correspondence to MTI, or costs

-4-

associated with TELE GUIA's formulation of its intellectual property strategy.

4.2    TELE GUIA agrees to provide, at MTI's request and expense (including reasonable per-diem solely for inventors named on the Patent), reasonable assistance to MTI in investigating or enforcing the Patent, including, without limitation, providing MTI with access to files, inventor's notes and other documentation in the TELE GUIA's possession or control and allowing MTI to interview inventors who are, at the time of any such investigation, employees of TELE GUIA. MTI further agrees to represent TELE GUIA in any legal action instituted by MTI or the Designated Party related to the Patent to which MTI is a party, including reasonable costs approved in advance by MTI; provided, however, that (i) MTI shall not be liable to TELE GUIA for any costs related to TELE GUIA's retention of separate counsel, and (ii) MTI shall not be liable for any representation of (or payment of costs or fees to) any third party which acquires TELE GUIA's remaining undivided joint interest in the Patent (or any portion thereof). Except as expressly provided herein, MTI assumes no liability for direct or consequential damages relating to any action by or against TELE GUIA (or its assignees or successors in interest) or with respect to any enforcement or other proceeding.

4.2.1    In the event that TELE GUIA is required under Rule 19 or other rules of civil procedure to be joined as a party to any action instituted by MTI, TELE GUIA agrees to cooperate fully with MTI and submit itself to the jurisdiction of the court before which such action is pending.

4.2.2    In the event that damages or attorney's fees are assessed jointly and severally against MTI and TELE GUIA in any action relating to MTI's enforcement efforts with respect to the Patent, MTI agrees to assume liability for payment of such damages and fees, except to the extent that such damages and fees result from TELE GUIA's conduct, action, or inaction, or with respect to a separate and independent claim against TELE GUIA.

4.2.3    In the event that TELE GUIA is purchased or acquired by a third party other than the Designated Party, MTI agrees to represent said third party in any legal action instituted by MTI or the Designated Party related to the Patent to which MTI is a party, including payment of reasonable costs approved in advance by MTI; provided, however, that (i) MTI shall not be liable to said third party for any costs related to the third party's retention of separate counsel, and (ii) MTI shall not be liable for any costs additional to those costs reasonably expected to be incurred by MTI in its representation of TELE GUIA in the same legal action under paragraph 4.2 above had TELE GUIA not been purchased or acquired by said third party.

4.2.4   In the event that TELE GUIA is purchased or acquired by the Designated Party, MTI shall not be liable for legal representation (or any costs or fees relating thereto) to TELE GUIA, the Designated Party, or any related entity formed therefrom.

4.3     Except for recording the Assignment Document (as described in Paragraph 3.1) with the appropriate patent authorities, MTI and TELE GUIA both agree to keep in confidence and not to disclose to any third party the terms and conditions of this Agreement; provided, however, that (i) either party may disclose such terms with the prior written permission of the other party or to the extent it is required to do so by order of a court of competent jurisdiction, and (ii) TELE GUIA may disclose pursuant to negotiations and under a non-disclosure agreement (NDA) with a third party other than the Designated Party who has expressed a bona fide interest in the sale or licensing of TELE GUIA's remaining ownership interest in the Patent, only the fact that the right to license the Designated Party under the Patent has been transferred to MTI, and that MTI retains the right to manufacture products (or have products manufactured) under the Patent.



4.3.1   TELE GUIA and MTI further agree that TELE GUIA may disclose under NDA only a redacted version of this Agreement in the form of Exhibit B, attached hereto, to any bona fide purchaser which has reached written agreement with TELE GUIA on all or substantially all terms regarding the purchase of the remaining undivided joint interest in the patent at the time of disclosure.

4.3.2   TELE GUIA and MTI also agree that TELE GUIA may disclose under NDA this Agreement in its entirety to any bona fide purchaser which has reached written agreement with TELE GUIA on all or substantially all terms regarding the sale or acquisition of TELE GUIA by said bona fide purchaser.

4.3.3   Nothing in this Agreement shall be construed to in any way give TELE GUIA or its legal representatives the right to identify MTI as the co-owner of the Patent to any party, or to disclose the Agreement (or any part thereof) to any party, except as explicitly provided herein.

4.3.4   MTI agrees that it shall disclose to TELE GUIA information it obtains after the Effective Date regarding the validity of the Patent and the construction of claims therein, such information to be held in confidence in accordance with the provisions of Section 4.3 of this Agreement, and disclosed to TELE GUIA within a reasonable period of time after being obtained by MTI. MTI further agrees that it shall, absent any bar or prohibition by a court of competent jurisdiction or other confidentiality obligation, disclose to TELE GUIA the relevant terms of any settlement

agreement it reaches with the Designated Party within a reasonable period after such settlement agreement becomes effective. Nothing under this Section 4.3.4 shall obligate MTI to disclose to TELE GUIA or any other party information relating to its assertion or defense of the patent including, without limitation, litigation documents, attorney work product, settlement proposals, licensing offers or counter-offers, or correspondence.

4.4     Any notice, report, statement, request or other communication required or permitted under this Agreement shall be in writing and shall be deemed to have been given when received by the party to which such communication is directed at its address set forth below or at such other address as such party may have therefore designated in writing to the other party hereto. A receipt evidencing delivery of certified or registered mail shall constitute evidence of receipt. Any notice requiring prompt action shall be contemporaneously sent by facsimile transmission.

4.5     In the event that TELE GUIA elects not to pay a future maintenance fee on the Patent, or not to prosecute any continuation, divisional, reissue, or foreign application associated therewith, TELE GUIA shall give MTI notice of this election at least sixty (60) days prior to the due date of such maintenance fee, or to any other due date wherein such election would cause potential injury to rights under the Patent or application and, at MTI's election, shall assign all of its interest in the Patent to MTI.

4.6     MTI and TELE GUIA each agree that neither party will consent or stipulate that the Patent (or any part thereof) is invalid or unenforceable in any action, settlement, or negotiation relating to the Patent without written permission by the other party.

4.7     If the Patent is held unenforceable with respect to the Designated Party due to fraud, gross misrepresentation, or failure to disclose information material to the patentability per 37 C.F.R. §1.56, then TELE GUIA agrees to reimburse MTI....

4.8     If the Patent is found to be licensed to the Designated Party at any time, then TELE GUIA agrees to reimburse MTI....

4.9     If the Patent is declared invalid or unenforceable in any action brought by TELE GUIA against any third party prior to the time MTI has settled with the Designated Party, then TELE GUIA agrees to reimburse MTI the entire consideration paid to it by MTI under Section 3.3 of this Agreement; provided, however, that the obligation of TELE GUIA to reimburse MTI under this Section 4.9 shall expire three (3) years from the Effective Date.

4.10    Except as provided in paragraphs 4.7, 4.8, and 4.9 of this Agreement, TELE GUIA assumes no liability for consequential damages, and direct damages shall be deemed to be liquidated by the aforementioned paragraphs. Nothing in this paragraph shall deny MTI the right to seek specific performance of any obligation of TELE GUIA set forth in, or relating to, this Agreement.

4.11    Notices to TELE GUIA shall be sent to:

Mr. José E. Herrero-García
President
Tele Guia Talking Yellow Pages, Inc.
504 (Altos) Francisco Seinz Street
Hato Rey, PR 00918

Notices to MTI shall be sent to:

Roderic L. Lewis
Vice President
General Counsel and Corporate Secretary
Micron Technology Inc.
8000 South Federal Way
Boise, ID 83706

4.12    This Agreement sets forth the entire understanding between TELE GUIA and MTI and supersedes all previous understandings, agreements, communications and representations, whether written or oral, concerning the subject matter to which this Agreement relates.

4.13    The terms and conditions of this Agreement shall be governed by and interpreted under the laws of the State of California without giving effect to its internal principles of conflicts of laws and may not be superseded, amended or modified except by written agreement between the parties. Any litigation brought by MTI under this Agreement shall be brought exclusively in the state or federal courts located in Puerto Rico. Any litigation brought by TELE GUIA under this Agreement shall be brought exclusively in the state or federal courts located in Idaho.

4.14    If any provisions, or portion thereof, of this Agreement, or application thereof to any person, place, or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as otherwise applied shall remain in full force.

4.15   This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, all of which constitute one and the same Agreement.


IN WITNESS WHEREOF, this Agreement has been executed by duly authorized representatives of the parties on the date below.

MICRON TECHNOLOGY INC.          TELE GUIA TALKING YELLOW PAGES, INC.

By: _____          By: _____

Printed Name: _____          Printed Name: _____

Title: _____          Title: _____

Date: _____          Date: _____


STATE OF _____        )
                                                    ) ss.
COUNTY OF _____        )


On this _____ day of _____, 19___, before me personally appeared _____, to me known to be the _____ of TELE GUIA TALKING YELLOW PAGES the corporation that executed the within and foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he was authorized to execute said instrument.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal the day and year first above written.


_____
(Signature)

Notary public in and for the State of _____, residing at _____. My appointment expires _____.

S:\DOCS\RFG\RFG-1640.DOC

AFFIDAVIT NO. _70_

COUNTY OF _____ ) ss.
) 

 

 

Acknowledge and subscribed on this 15th day of March, 1999, before me personally appeared Jose E. Herrero-García, of legal age, single, inventor and resident of San Juan, Puerto Rico to me known to be the President of TELE GUIA TALKING YELLOW PAGES the corporation that executed the within and foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he was authorized to execute said instrument.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
(Signature)

Notary public in and for the State of Puerto Rico

S:\DOCS\...\...\...\...DOC
030499

# CERTIFICATE OF CORPORATE RESOLUTION

## OF

## TELE GUIA-TALKING YELLOW PAGES, INC.

I, María L. Noy, Secretary of **TELE GUÍA-TALKING YELLOW PAGES, INC.**, a corporation duly organized under the laws of the Commonwealth of Puerto Rico, hereby certify that at a meeting of the Board of Directors of the Corporation duly convened and held on March 15, 1999, the follow resolution was unanimously adopted.

**RESOLVED,** that Mr. José Herrero, President of the Corporation, be authorized and empowered to execute, on behalf of this Corporation, and together with duly authorized representatives of **MICRON TECHNOLOGY, INC.**, an agreement entitled **ASSIGNMENT AND AGREEMENT** in order to grant and/or assign an undivided joint ownership interest in patent no. 5479491 as described in the agreement itself.

I hereby certify that the abovementioned resolution has not been revoked or amended.

**IN WITNESS WHEREOF,** I execute this Certificate of Corporate Resolution in San Juan, Puerto Rico, this 16 day of March, 1999.

MARÍA L. NOY
SECRETARY