```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
TELE-GUÍA TALKING YELLOW PAGES, INC.,    :
                    Plaintiff,           :
                                         :    07 Civ. 3948 (DLC)
          -v-                            :
                                         :    OPINION AND ORDER
CABLEVISION SYSTEMS CORPORATION,         :
                    Defendant.           :
                                         :
-----------------------------------------X
```

Appearances:

For Plaintiff:

Robert B. Golden
Jeffrey M. Rollings
Lackenbach Siegel LLP
One Chase Road
Scarsdale, New York 10583

For Defendant:

Benjamin Hershkowitz
Goodwin Proctor LLP
599 Lexington Avenue
New York, New York 10022

DENISE COTE, District Judge:

On May 21, 2007, plaintiff Tele-Guía Talking Yellow Pages, Inc. ("Tele-Guía") filed this action against defendant Cablevision Systems Corporation ("CSC") for patent infringement and inducement to infringe patents. CSC has moved to dismiss this action pursuant to Rule 12(b)(7), Fed. R. Civ. P., for failure to join as necessary and indispensable parties an inventor and an assignee of the patents. The motion is denied.

BACKGROUND

The following facts are based upon documents submitted by both parties and are not in dispute for purposes of this motion. This action concerns two patents, both titled Integrated Voice-mail Based Voice and Information Processing System. U.S. Patent number 5,187,735 ("'735 Patent") was issued on February 16, 1993, and lists Jose E. Herrero Garcia and Carlos R. Jiménez Rodriguez ("Rodriguez") as inventors. As of June 4, 1990, several months after the '735 Patent application was filed, both inventors assigned the patent and any continuations[1] of the patent to Tele-Guía. U.S. Patent number 5,479,491 ("'491 Patent"), a continuation of the '735 patent, issued on December 26, 1995.

On or about March 23, 1999, Tele-Guía assigned to Micron, by written agreement ("Micron Agreement"), an undivided joint ownership interest in the '491 Patent. The Micron Agreement provides in part:

> TELE GUIA grants to [Micron], and agrees that [Micron] shall have, the exclusive right to enforce the rights and interests under the Patent against the Designated Party and/or its agents and representatives, including the right to collect for all damages resulting from infringement occurring prior to the Effective Date of this Agreement, and the right to grant prospective

---

[1] The cited exhibit does not refer to continuations of the patent, but the defendant does not contest that the patents were both assigned to Tele-Guía.

2

>licenses and sublicenses to the Designated Party. [Micron] grants to TELE GUIA, and agrees that TELE GUIA shall have, the exclusive right to enforce the rights and interests under the Patent against third parties other than the Designated Party.

(Emphasis supplied). By letter dated March 25, 1999, pursuant to the Micron Agreement, Micron selected Lucent Technologies, Inc. ("Lucent") as the Designated Party.

In November 1999, a "short-form" of the Micron Agreement ("short-form Micron Agreement") was recorded with the United States Patent and Trademark Office ("USPTO"). The short-form Micron Agreement, upon which CSC relied in bringing its motion to dismiss, described the assignment of ownership rights but not the restrictions on Micron's right to enforce the patent.

On or about May 14, 2003, Tele-Guía settled a lawsuit with Liberty Cablevision of Puerto Rico, Inc. ("Liberty") by executing a settlement agreement ("Liberty Agreement"). In the Liberty Agreement, Tele-Guía warranted that it owned both patents at issue in this case, had "the right to fully release Liberty for any alleged past infringement" of the patents, and had "the right to grant licenses to other parties including Liberty." It agreed not to sue Liberty for infringement of the patents and granted Liberty a "perpetual, royalty-free, nonexclusive license" to the patents. It also agreed to indemnify and hold Liberty harmless in the event of any action on either of the patents by any party, "including but not

limited to" Micron and Rodriguez.  Tele-Guía warranted that, as a result of the license it was granting to Liberty,

> no other party, including but not limited to Micron Technology, Inc. and/or Carlos R. Jiménez Rodríguez, (1) has any claim or any interest in any claim against Liberty relating to the Patents or any other Related Patents, Related Patent applications or Related Patent Rights, or (2) has the right to any remedies associated with the Patents for past, present or future violation of either of the Patents or any other Related Patents, Related Patent applications or Related Patent Rights by Liberty.

DISCUSSION

The defendant contends that the action must be dismissed for failure to join two parties, Micron Technology, Inc. ("Micron") and Rodriguez.  Second Circuit law governs the issue of whether the litigation may proceed in the absence of Micron or Rodriguez.  See Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1461 (Fed. Cir. 1990).

Rule 12(b)(7) provides that an action may be dismissed for failure to join a party under Rule 19 of the Federal Rules of Civil Procedure.  The Rule 19 framework was described by this Court in In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2004 WL 2955237 (S.D.N.Y Dec. 22, 2004).  In brief, Rule 19 sets forth a two-step test for determining whether a court must dismiss an action for failure to join an indispensable party.  Viacom Int'l Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir.

4

2000). First, the court must determine whether an absent party is a "necessary" party under Rule 19(a). Id. Rule 19(a) provides that the absent party should be joined, if feasible, where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). See MasterCard Int'l Inc. v. Visa Int'l Svc. Ass'n, Inc., 471 F.3d 377, 385 (2d Cir. 2006) (citing Fed. R. Civ. P. 19(a)). With respect to the second prong of Rule 19(a), "there must be more than an unsupported assertion that [the non-joined party] has a claim to that interest." Jonesfilm v. Lion Gate Int'l, 299 F.3d 134, 140 (2d Cir. 2002).

Where a court makes a threshold determination that a party is necessary under Rule 19(a) and joinder of the absent party is not feasible for jurisdictional or other reasons, the court must then determine whether the party is "indispensable" under Rule 19(b). Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., --- F.3d ----, No. 05-5129-cv, 2007 WL 2458411, at *6 (2d Cir. Aug. 31, 2007). Rule 19(b) provides that the following factors should be considered in making such a determination:

>     first, to what extent a judgment rendered in the
>     person's absence might be prejudicial to the person or
>     those already parties; second, the extent to which, by
>     protective provisions in the judgment, by the shaping
>     of relief, or other measures, the prejudice can be
>     lessened or avoided; third, whether a judgment
>     rendered in the person's absence will be adequate;
>     fourth, whether the plaintiff will have an adequate
>     remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). District courts take a "flexible approach" when deciding whether parties are indispensable, and the Second Circuit has held in the context of an absent party whose joinder would destroy diversity, that "very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." Universal Reins. Co., Ltd. v. St. Paul Fire & Marine Ins. Co., 312 F.3d 82, 87 (2d Cir. 2002) (citation omitted). It is not necessary to reach the Rule 19(b) analysis unless a party is found to be "necessary" under Rule 19(a). Mastercard Int'l, 471 F.3d at 289. The moving party "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." Mattera v. Clear Channel Communications, Inc., 239 F.R.D. 70, 74 (S.D.N.Y. 2006).

All "entities with an independent right to enforce the patent are indispensable or necessary parties to an infringement suit." IpVenture, Inc. v. Prostar Computer, Inc., Nos. 2006-

6

1012, 2006-1081, 2007 WL 2812677, at *1 (Fed. Cir. Sept. 28, 2007) (citing, among other cases, Independent Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 468 (1926)). These entities generally include all co-owners. Int'l Nutrition Co. v. Horphag Research Ltd., 257 F.3d 1324, 1331 (Fed. Cir. 2001); Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1467-68 (Fed. Cir. 1998). The requirement that an owner be joined as a plaintiff is intended to prevent multiple suits on the same patent against a single infringer. Vaupel Textilmaschinen KG v. Meccanica Euro Italian S.P.A., 944 F.2d 870, 875 (Fed. Cir. 1991). Where "the co-owner of a patent . . . has specifically disclaimed all interest in pursuing litigation related to the patent in favor of the party who has brought the suit," however, "courts have held that joinder of the co-owner or other entity or individual is not necessary." Agilent Techs., Inc. v. Micromuse, Inc., No. 04 Civ. 3090 (RWS), 2004 WL 2346152, at *7 (S.D.N.Y. Oct. 19, 2004) (citing, among other cases, Vaupel Textilmaschinen, 944 F.2d at 875-76). See, e.g., Dow Chemical Co. v. Exxon Corp., 139 F.3d 1470, 1479 (Fed. Cir. 1998) (holding that patent owner was not indispensable party where it had granted another party the right to sue for infringement of the patent, the right to defend the patent owner in litigation concerning the patent, and the right to sublicense the patent without notifying the patent owner, and where the

licensee had vigorously defended the patent); see also Ethicon, 135 F.3d at 1468 n.9 (co-owner need not be joined where it has contracted away right to refuse to bring an infringement suit).

CSC has not shown that either Micron or Rodriguez is a necessary party.  There is no evidence that Rodriguez is a current owner of either patent or has any license that would permit him to enforce either patent.

Although Micron does have an ownership interest in the '491 Patent, it contracted with Tele-Guía to disclaim any right to enforce this patent against parties other than Lucent.  In light of this provision of the Micron Agreement, it cannot be said that Micron's absence from this litigation prevents complete relief from being accorded between Tele-Guía and CSC.  See Fed. R. Civ. P. 19(a).  CSC has not established that disposition of this action in Micron's absence would "as a practical matter impair or impede" Micron's "ability to protect" its interest, given that Micron has no right to sue any party other than Lucent for infringement.  Id.  For the same reason, the failure to join Micron would not leave CSC "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  Id.

CSC argues that the Liberty Agreement's indemnification provision, which mentions Micron and Rodriguez by name, establishes that Micron and Rodriguez have the right to enforce

8

the patents-in-suit.  This argument fails.  The Liberty Agreement does not state that Micron or Rodriguez has any enforcement rights, and it is entirely consistent with a finding that they have none against CSC.  For example, the Liberty Agreement states that "no other party," including Rodriguez, has any right to sue Liberty on either patent.

CSC argues, further, that Tele-Guía has not secured a "specific disclaimer" from Micron or Rodriguez indicating that they will not assert patent rights against CSC.  It argues that those district court rulings that found that co-owners were not necessary parties did so where those co-owners had "specifically disclaimed all interest in pursuing litigation related to the patent," Agilent, 2004 WL 2346152, at *7, or had filed a stipulation or declaration acknowledging that they would be bound by the outcome of the lawsuits, see Int'l Business Machines Corp. v. Conner Peripherals, Inc., No. C 93 20591 RMW, 1994 WL 706208, at *2, 5 (N.D. Cal. Jan. 28, 1994); Michaels of Oregon Co. v. Mil-Tech, Inc., Civ. No. 95-908-MA, 1995 WL 852122, at *2 (D. Or. Oct. 17, 1995).

Rule 19(a) does not require that evidence that an owner lacks the ability to sue a defendant for infringement take any specific form.  The district court opinions that CSC has cited applied the Rule 19 standard to the facts before them.  Here, while Micron is a co-owner of the '491 Patent, it has contracted

9

away any right it may have had to sue CSC for infringement of that patent. Similarly, Rodriguez cannot be required to disclaim an intention to sue CSC for infringement where there is no evidence that he has the right to bring such a suit.

Finally, although the short form of the Micron Agreement, which was filed with the USPTO in lieu of the entire agreement, does not describe the restrictions on Micron's enforcement rights in the '491 Patent, the defendant has identified no reason that the short form agreement would nullify the provision of the Micron Agreement limiting Micron's right to enforce the patent. Similarly, the defendant has not argued that the fact that the full Micron Agreement was not filed with the USPTO prevents its enforcement.

CONCLUSION

CSC's August 1, 2007 motion to dismiss is denied.

SO ORDERED.

Dated:   New York, New York
         October 31, 2007

                                    _____
                                    DENISE COTE
                                    United States District Judge